IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES GOTON,

        Plaintiff,

v.                                    CV 12-0194 GBW/LAM

Sierra County Sheriff's Deputies
NOAH THOMAS PESTAK, LUIS ORTEGA,
JOE TREJO, JEFF JONES, CLAYTON REID,
and SIERRA COUNTY SHERIFF'S
DEPARTMENT,

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

        THIS MATTER comes before the Court on Defendants' Motion to Dismiss.  *Doc. 12*.  The parties have fully briefed the motion.  *Docs. 18, 22, 23*.  The motion will be granted in part and denied in part.

### *Complaint's Factual Allegations*

        This case arises from an incident involving Plaintiff and Defendants that occurred on May 16, 2011.  *Doc. 1*, Ex. B ¶ 1.  Plaintiff was 72 years old at the time.  *Id.* ¶ 1.  At some time prior to the incident, Plaintiff suffered a stroke that caused him to lose the ability to place his hands behind his back.  *Id.* ¶ 38.  Plaintiff owns "a gas station in Caballo, NM, called Lakeview R.V. Park . . . about fifteen miles south of Truth or

Consequences, near the intersection of state road 152 and state road 187." *Id.* ¶

7.   Plaintiff operates the gas station as a small business with his wife. *Id.* ¶ 7.

At about 5:50 a.m. on the day of the incident, the U.S. Border Patrol pulled over

an erratic driver, Dennis Siivola, at Plaintiff's gas station. *Id.* ¶¶ 8-9.   At the outset of the

incident, the Border Patrol parked three trucks at Plaintiff's gas station, and these

trucks, along with Siivola's, completely blocked access to Plaintiff's gas pumps. *Id.* ¶¶

8, 10. "At about 6:20 a.m., Plaintiff . . . calmly asked [the Border Patrol agents] if they

wouldn't mind moving their trucks" for the purpose of clearing access to the gas pumps

for Plaintiff's potential customers. *Id.* ¶ 11. "The agents respectfully replied that they

would[,] and moved two of the four trucks . . . ." *Id.* ¶ 12. Shortly thereafter,

Defendants Pestak and Ortega, both Sheriff's Deputies for Sierra County, arrived in

separate trucks at Plaintiff's gas station and parked them so as to again block access to

Plaintiff's gas pumps "as they took control of the scene." *Id.* ¶¶ 13-14. "After a few

more minutes, at least two more vehicles with the Sierra County Sheriff's department

arrived, including those of Defendant[s] Reid and Jones, further blocking access to

Plaintiff's business." *Id.* ¶ 15.

Plaintiff states that he "waited a few more minutes for the six vehicles to

conclude their investigation of the traffic stop before again approaching the

defendants." *Id.* "Upon exiting his store, Plaintiff . . . calmly asked, 'Who was in charge

here?' to which Defendant Pestak raised his hand, answering that 'he was,' in . . . a rude and arrogant manner." *Id.* ¶¶ 16-17.

"Plaintiff . . . again asked if the Defendant's [sic] could clear access to the pumps, as they were interfering with operation of his business." *Id.* ¶ 18.  Defendant Pestak responded, "in a hostile tone that Plaintiff . . . should return to his store or he would be arrested." *Id.* ¶ 19.  Plaintiff "stated that he would remain standing on his property, becoming defensive." *Id.*  "Defendant Pestak informed Plaintiff that he would be arrested." *Id.* ¶ 21.  "Plaintiff asked what he was being arrested for, and on what charges." *Id.* ¶ 22.  Without answering, "Defendant Pestak grabbed the right side of Plaintiff's shirt and" attempted to handcuff Plaintiff, tearing Plaintiff's shirt.  *Id.* ¶¶ 23-24.

At that point, "Defendant Ortega assisted Defendant Pestak by slamming Plaintiff up against their patrol unit, and attempting to place Plaintiff's left arm behind his back." *Id.* ¶ 25.  "Defendant Trejo assisted in the arrest by attempting to gain control of Plaintiff's arms and wrists." *Id.* ¶ 26.  "After placing a handcuff on Plaintiff's right wrist, Defendant Pestak began twisting Plaintiff's arm, causing [Plaintiff] a great deal of pain." *Id.* ¶ 27.  During the struggle, "Plaintiff never threatened the use of force against Defendants," but "Defendant Pestak threatened" to tase "Plaintiff at least three times." *Id.* ¶ 28.  Defendant Ortega struck Plaintiff from behind the knees, taking him to the

ground." *Id.* ¶ 29.  Plaintiff told Defendants that he was having a heart attack, and they then released him.  *Id.* ¶ 32.

Border Agent Meechem, an EMT, "took Plaintiff's blood pressure . . . , and told him to relax, breathe deeply, and to try to calm down until an ambulance could arrive. Plaintiff fully consented to this treatment." *Id.* ¶¶ 32-33.  "A first responder with the Caballo Fire Department arrived, took Plaintiff's blood pressure, and" administered oxygen to Plaintiff.  *Id.* ¶ 34.  Personnel from a second ambulance "wanted to transport Plaintiff to the hospital . . . believing that Plaintiff was having a 'small heart attack.'" *Id.* ¶ 35.  Plaintiff consented to having his vital signs monitored electronically, but did not want to be taken to the hospital.  *Id.* ¶ 37.

At that time, Plaintiff informed the individuals present that "as a result of a prior stroke, he could not place his hand and arm behind his back." *Id.* ¶ 38.  "Defendant Reid asked Plaintiff if he could be handcuffed from the front, and executed the formal arrest of Plaintiff." *Id.* ¶¶ 39, 41.  Defendants took Plaintiff to a truck and asked him to get in the back seat.  *Id.* ¶ 41.  Plaintiff's wife, "needing the keys to the store . . . retrieved Plaintiff's keys, pocket knife, money clip, and Leatherman with flashlight from his belt." *Id.* ¶ 42.  Defendants removed Plaintiff's handcuffs to make it easier for him to get in the truck, Plaintiff got in the truck, and Defendants again handcuffed Plaintiff.  *Id.* ¶¶ 41, 43.

Driving at speeds exceeding ninety miles per hour while sending text messages, Defendant Pestak transported Plaintiff to the Sierra County Detention Center where Defendant Pestak supervised Plaintiff's booking. *Id.* ¶¶ 44-47.  A few minutes later, Plaintiff's wife arrived and paid a bond of $2,000, whereupon jail personnel released Plaintiff. *Id.* ¶ 48.

"On May 16, 2011, Defendant Pestak caused Plaintiff to be charged with resisting and obstructing an officer . . . ." *Id.* ¶ 49.  Plaintiff retained an attorney to defend him against those charges.  "On September 19, 2011, Senior Trial Attorney Mercedes Murphy entered a *Nolle Prosequi*, declining to further prosecute Plaintiff 'in the interests of justice.'" *Id.* ¶ 51.  On August 9, 2011, Plaintiff, through counsel, "provided a valid tort claim notice under 41-4-16, NMSA 1978." *Id.* ¶ 52.

On January 31, 2012, Plaintiff filed suit in state court for violation of his civil rights. *See doc. 1* Ex. B.  The named defendants are: Thomas Pestak, Luis Ortega, Joel Ortega, Jeff Jones, Clayton Reid, and Sierra County Sheriff's Department. *Id.*  On February 28, 2012, Defendants removed the case to this Court. *See doc. 1.*  Plaintiff raises eight counts -- the first four of which are based on asserted violations of his federal rights, and the next four of which are designated as state constitutional and tort claims. Some of these counts are against all defendants, and some against only specified defendants.

Under Count I, Plaintiff alleges that all named defendants violated his Fourth Amendment right to be free from the unreasonable seizure of his person by "detaining him, arresting him, and charging him without probable cause." *Id.* ¶ 54.

Under Count II, Plaintiff alleges that Defendant Pestak violated Plaintiff's rights under the Fourth and Fourteenth Amendments to be free from prosecution without probable cause by improperly causing him to be charged with "resisting, evading, or obstructing an officer . . . ." *Id.* ¶¶ 60-65.

Under Count III, Plaintiff alleges that Defendants Pestak, Ortega, and Trejo violated Plaintiff's "Fourth Amendment right to be free of unreasonable seizures and arrests conducted through the excessive use of force" by applying force to Plaintiff that "was objectively unreasonable under the true circumstances. *Id.* ¶¶ 66-76.

Under Count IV, Plaintiff alleges that all Defendants improperly violated his First Amendment right to free speech by arresting him in retaliation for exercising that right by expressing his displeasure at their interruption of his business activities. *Id.* ¶¶ 77-86.

Under Count V, Plaintiff argues that Defendants[1] violated his rights under state law to be free from unreasonable search and seizure.

Under Count VI, Plaintiff argues that, under state law, Defendants committed torts against him rooted in battery and excessive force. *Id.* ¶¶ 90-93.

---

[1] Although the Complaint is less than clear on this point, the Court construes it as bringing Counts V-VIII against all defendants.

Under Count VII, Plaintiff argues that Defendants violated state law or his state constitutional rights to be free from false imprisonment and false arrest when they "arrested him and held him against his will without probable cause . . . ."  *Id.* ¶¶ 94-95.

Under Count VIII, Plaintiff argues that Defendants committed state law violations related to malicious prosecution and abuse of process "when they caused the charging of him for crimes without probable cause and pursued criminal actions against him for months after his wrongful arrest."  *Id.* ¶¶ 96-97.

Plaintiff requests various forms of relief, including actual and compensatory damages, punitive damages, attorneys' fees, other costs, and "a written apology from the individual Defendants involved."  *Id.* at 13.

### *Legal Standards*

A party may move to dismiss for, *inter alia*, "failure to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  "Granting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001) (internal quotation marks omitted).  In deciding a motion filed under Rule 12(b)(6), the Court accepts all well-pleaded facts in the complaint as true and views them in the light most favorable to the non-moving party. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).

Federal Rule of Civil Procedure 8(a)(2) addresses the requirements for a well-pleaded complaint.  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court stated that two principles govern the application of Rule 8(a)(2).  The first principle is that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  This means that "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than mere conclusions."  *Id*. at 678-79.

The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.  As to the difference between mere possibility and the plausibility Rule 8 requires, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and `that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly* 550 U.S. 554, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Generally, in ruling on a rule 12(b)(6) motion to dismiss, a court

must review the sufficiency of the complaint based on its contents alone.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

## *Analysis*

**Scope of Court's Consideration**

As noted above, under a Rule 12(b)(6) analysis, a court's function is "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted."  *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (citations omitted).  The court does not look beyond the complaint "to weigh potential evidence that the parties might present at trial."  *Id*.  However, the court may also consider "the attached exhibits and documents incorporated into the complaint by reference."  *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).  Obviously, such incorporation cannot occur after the fact but must be explicitly expressed in the complaint when filed.  *See* Fed. R. Civ. P. 10(c).

In his Response, Plaintiff catalogues new factual allegations and new claims. This Court is permitted to consider matters beyond the complaint and items incorporated into it, but such would require converting the motion into a summary judgment motion.  *See* Fed. R. Civ. P. 10(d).  For a variety of reasons, such a conversion is inappropriate in this matter.  Therefore, the matters outside the pleadings will be excluded from consideration.  *Id*.

**Improper Party**

Plaintiff names "Sierra County Sheriff's Department" ("SCSD") as a Defendant in his §1983 claims in Counts I-IV.  Defendant SCSD contends that it is not a legal entity subject to suit under §1983.  Indeed, "sheriff's departments and police departments are not usually considered legal entities subject to suit." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  "The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued." *White v. Utah*, 5 Fed. Appx. 852, 853 (10th Cir. 2001).  Plaintiff has not responded to this argument at all, let alone provide any statutory or case authority supporting a direct action against SCSD.  Nonetheless, as Defendants concede, "Plaintiff's claims against an entity of Sierra County are equivalent to claims against Sierra County itself." *Doc. 12* at 1 n.1.  As such, rather than dismissing Defendant "Sierra County Sheriff's Department" and inviting an amended complaint to add Defendant "Sierra County," the Court will simply substitute Defendant "Sierra County" for Defendant "Sierra County Sheriff's Department."

**Claims for Punitive Damages**

Plaintiff seeks punitive damages as follows: (1) under Count I "against the individual Defendants;" (2) under Count IV against Defendants; and (3) under Count VIII "against the individual Defendants." *Doc. 1*, Ex. B ¶ 58, 85, 98.

Defendants argue that, with respect to the §1983 claims in Counts I and IV, the County Defendant cannot be subject to punitive damages. Plaintiff did not respond to

this argument but it is undeniably correct.  *See City of Newport v. Fact Concerts, Inc.*, 453

U.S. 247, 261 (1981) (municipal entities are immune from punitive damages under §

1983).  *Doc. 12* at 4-5.  Therefore, all claims for punitive damages against County

Defendant for claims pursuant to § 1983 will be dismissed.

Defendants also argue that, with respect to each of Plaintiff's state claims, none

of Defendants can be subject to punitive damages.  *Doc. 12* at 26.  Defendant rely upon

New Mexico's Tort Claims Act which states, "No judgment against a governmental

entity or public employee for any tort for which immunity has been waived under the

Tort Claims Act shall include an award for exemplary or punitive damages or for

interest prior to judgment."  Plaintiff failed to respond to this argument as well and,

thus, has not disputed that all his state claims are covered by the Tort Claims Act.

Indeed, it appears plainly from the Complaint that they are.  Consequently, all claims

for punitive damages pursuant to state law claims will be dismissed.

Therefore, the only remaining punitive damages claims arise in Counts I and IV

against the individual Defendants.  *See e.g. Smith v. Wade*, 461 U.S. 30 (1983) (plaintiff

may recover punitive damages against an official in their personal capacity if the official

acted with a malicious or evil intent or in callous disregard of the plaintiff's federally

protected rights).

**Federal Claims against County**

Municipal entities are subject to liability under § 1983 but not on the basis of

*respondeat superior*.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  In other words, a

municipality may not be held liable under § 1983 solely because it hired an employee

who committed a constitutional violation.  *See Connick v. Thompson*, 131 S. Ct. 1350, 1359

(2011) ("[U]nder § 1983, local governments are responsible only for 'their *own* illegal

acts.'  They are not vicariously liable under § 1983 for their employees' actions.").

Instead, a municipality is liable under § 1983 only when the violation of the plaintiff's

federally protected right can be attributed to the enforcement of a municipal policy,

practice, or decision of a final municipal policymaker.  *See e.g. City of St. Louis v.

Praprotnik*, 485 U.S. 112, 127 (1988); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469,

481-83 (1986).  The instant complaint contains no allegations that the claimed violation

was caused by any such policy, practice, or decision.  Therefore, Plaintiff's allegations

against the County fail to state a claim under § 1983 and, thus, Counts I and IV against

the County[2] will be dismissed.[3]

**Specificity of Complaint**

      To properly state a claim, Plaintiff's "complaint must explain what each

defendant did to him . . . ; when the defendant did it; how the defendant's action

---

[2] It is unclear whether Plaintiff is seeking to bring claims against the individual Defendants "in their official capacity."  Such claims would simply be the equivalent of a claim against the municipality.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Therefore, any "official capacity" claims included in Counts I or IV will also be dismissed.  In fact, as the Complaint contains no allegations of any County policy, practice or decision in Counts II or III, any "official capacity" claims included in those counts will be dismissed as well.
[3] Throughout his Response, Plaintiff indicates that the Court should permit the filing of an amended complaint.  To do so, Plaintiff must file a motion for leave to amend which complies with the Federal Rules of Civil Procedure and the local rules.  The Court takes no position on such a motion at this time.

harmed him . . . ; and, what specific legal right [Plaintiff] believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Justice Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).  In an action under 42 U.S.C. § 1983, "[t]he plaintiff must show the defendant personally participated in the alleged violation and conclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citations omitted).

*Defendant Jones*

Plaintiff specifically alleges that Defendants Pestak, Ortega, and Trejo participated in the physical seizure of Plaintiff's person, and states that Defendant Reid executed the formal arrest of Plaintiff.  *Doc. 1*, Ex. B ¶¶ 23-32, 39.  In contrast, the Complaint includes essentially no allegations regarding Defendant Jeff Jones.  In fact, contrary to the other individual Defendants, the Complaint does not even assert that he is a law enforcement officer.  *Compare id.*, ¶¶ 2-5.  The sole allegation regarding Defendant Jones is that "[a]fter a few more minutes, at least two more vehicles with the Sierra County Sheriff's department arrived, including those of Defendant Reid and Jones, further blocking access to Plaintiff's business."  *Id.*, ¶15.

Though not clearly directed at this pleading deficiency regarding Defendant Jones, Plaintiff's Response asserts that, as "established in *Mendenhall* , an officer can make a seizure by simply being present and doing nothing at all."  *Doc. 18* at 13. Plaintiff does not provide further citation for that proposition, and does not cite to a

specific page or passage in *Mendenhall* that supports it.  The Court has reviewed *United States v. Mendenhall*, 446 U.S. 554 (1980), but finds that it does not establish that an officer can make a seizure by simply being present and doing nothing at all.  To the contrary, the case states that "a person is 'seized' only when, by mean of physical force or a show of authority, his freedom of movement is restrained."  *Id.* at 553. Accordingly, an officer who neither applies physical force nor makes a show of authority cannot have participated in a seizure.  Because the Complaint fails to allege that Defendant Jones did either, Plaintiff fails to state a claim against Defendant Jones.[4] Therefore, Counts I and IV as to Defendant Jones will be dismissed.[5]

> *Remaining Defendants in Counts I, III, and IV*

Defendants argue that "Defendants are entitled to dismissal of Counts I, III, and IV because such claims do not specify which defendant allegedly violated which civil rights."[6]  *Doc. 12* at 2.  Defendants argue that "[b]y using generic, all encompassing terms, such as 'Defendant' or 'Defendants,' in counts I, III, and IV, [the Complaint] fails to state a claim upon which relief may be granted."  *Doc. 12* at 4.  Defendants argue that "[e]ven the specificity of the 'Factual Background' allegations of Plaintiff's Complaint

---

[4] The Court recognizes that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.  *See Mick ex rel. Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).  Plaintiff, however, has failed to allege that Defendant Jones even saw the alleged excessive force being used, let alone had the opportunity to stop it.

[5] Counts II and III are not directed at Defendant Jones.  Moreover, notwithstanding the lack of allegations against Defendant Jones, he does not seek dismissal of the state law claims (Counts V-VIII) on this basis.

[6] As this quotation is taken from a section heading, in the document it appears in title case.  For ease of reading, the Court removed the title casing.

does not support, and is inconsistent with, the generalized allegations and conclusions of Counts I, III, and IV, wherein all Defendants are treated as a single unit." *Id.* at 3 (italics removed).

As explained above, the federal claims against Sierra County and Defendant Jones will be dismissed. Therefore, the Court need only review this argument as it relates to the remaining Defendants in Counts I, III, and IV – Defendants Pestak, Ortega, Trejo and Reid. The Court recognizes that making specific allegations about who did what is particularly important in § 1983 cases involving multiple defendants. *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248-49 (10th Cir. 2008). Nonetheless, Plaintiff's Complaint sufficiently identifies the actions of these three Defendants to put them on notice as required by Federal Rule of Civil Procedure 8. Therefore, Defendants' Motion to Dismiss the federal claims against Defendants Pestak, Ortega, Trejo and Reid on the basis of insufficient specificity will be denied.

**Qualified Immunity**

Defendants argue that the Court should dismiss Counts I – IV as to all individual defendants because all individual defendants are shielded from liability by the doctrine of qualified immunity.

*Generally Applicable Standards*

"The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

"In resolving a motion to dismiss based on qualified immunity, a court must consider 'whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (omission in original).  Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thomas v. Durastanti,* 607 F.3d 655, 669 (10th Cir. 2010) (internal quotation omitted).  Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorf v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).  "[F]or a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Vondrak v. City of Las Cruces*, 535 F.3d at 1198, 1205 (10th Cir. 2008) (internal quotation omitted).

"Though a plaintiff is not required to show that the specific conduct was previously found to have been held unlawful, there must be a substantial correspondence so that the unlawfulness was apparent [to the officer]." *Herring v. Keenan*, 218 F.3d 1171, 1179 (10th Cir. 2000) (citation omitted). "A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it, . . . [instead] [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Herring*, 218 F.3d at 1176 (quotations and citations omitted). "However, where the reasonableness inquiry necessarily turns on the cases' particular facts such that the reasonableness determination must be made on an ad hoc basis, [a court] must allow some degree of generality in the contours of the constitutional right at issue." *Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir. 1997). The law "would be placing an impracticable burden on plaintiffs if [it] required them to cite to a factually identical case before determining they showed the law was 'clearly established' and cleared the qualified immunity hurdle." *Id.* Therefore, this Court requires "some but not precise factual correspondence in demanding that officials apply general, well developed legal principles.'" *Id.* "While qualified immunity was meant to protect officials performing discretionary duties, it should not present an insurmountable obstacle to plaintiffs seeking to vindicate their constitutional rights." *Id.*

"In determining whether the right [at issue] was 'clearly established' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the right was sufficiently clear that a reasonable officer would understand that what he [was] doing violate[d] that right." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (some internal quotation marks and alterations omitted). Outside of exceptional circumstances, the question of whether an officer has made a reasonable mistake of law is a question of law for the court. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217-18 (acknowledging that many circuits never submit question to jury but noting Circuit's exceptions). "'In the context of an unlawful arrest, [a court's] analysis is simple, for the law was and is unambiguous; a government official must have probable cause to arrest an individual.'" *Id.* at 1218. Nonetheless, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (citation omitted); *see also Keylon*, 535 F.3d at 1220 (question is whether "reasonable person in [officer's] position could have thought he had probable cause to arrest").

*Counts I and II: Unlawful Arrest and Malicious Prosecution*

In Count I, Plaintiff argues that "Defendants deprived [him] of his Fourth Amendment right to be secure in his person by detaining him, arresting him, and charging him with a crime without probable cause." *Doc. 1*, Ex. B ¶ 54. In Count II,

Plaintiff asserts that "Defendant Pestak caused the charging of Plaintiff with resisting, evading, or obstructing an officer . . ., for which there was no probable cause . . . ."  *Id.*, Ex. B ¶ 61.  Plaintiff argues that Defendant Pestak did so knowing that the charges lacked probable cause and that he "pursued criminal charges against the Plaintiff for months after his wrongful arrest."  *Id.*, Ex. B ¶ 63.

For both these charges, Defendants argue that, because there was probable cause for the arrest and the prosecution, they are entitled to dismissal of the charges.  *Doc. 12* at 11-14.  Specifically, Defendants contend that there was probable cause to believe that Plaintiff committed a violation of N.M.S.A. § 30-22-1(D)[7] which prohibits "resisting any … peace officer in the lawful discharge of his duties."  *Id*. at 13-14.

In light of the applicable standards, the Court must determine, after accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Plaintiff, if it is plausible that the Plaintiff could establish that: (1) probable cause did not exist for this crime and, (2) the officers' mistake to the contrary was unreasonable.

The Complaint describes a *Terry* stop of a third party which occurred at Plaintiff's place of business.  *Doc. 1*, Ex. B ¶ 7-16.  The stop was initiated by United States Border Patrol agents but the individual Defendants arrived later to assist.  *Id*.

---

[7] Plaintiff contends that he was cited for a violation of N.M.S.A. § 30-22-1(A).  However, that subsection, which deals with serving/executing judicial processes, is clearly inapplicable.  Even assuming Plaintiff was cited with the incorrect subsection, Defendants correctly point out that the relevant question is whether the police had probable cause to believe some offense had been committed.  *See United States v. Edwards*, 632 F.3d 633, 640 (10th Cir. 2001).  The only offense for which Defendants claim probable cause existed is N.M.S.A. § 30-22-1(D).  Thus, the Court will analyze the contours of that statute.

When the individual Defendants arrived, their vehicles blocked access to Plaintiff's business.  *Id.*, ¶¶ 13-15.  Plaintiff first inquired about who was in charge.  *Id.*, ¶ 17. When Defendant Pestak indicated that he was in charge, Plaintiff asked him to move the vehicles which were blocking access.  *Id.*, ¶ 18.  Defendant Pestak then directed Plaintiff to "return to his store or he would be arrested."  *Id.*, ¶ 19.  Plaintiff refused to follow the direction saying that he would remain standing on his property.  *Id.*, ¶ 20. Defendant Pestak then informed Plaintiff that he would be arrested.  *Id.*, ¶ 21.  Plaintiff responded by asking about the basis for such an arrest.  *Id.*, ¶ 22.  At that time, Defendants Pestak, Ortega and Trejo arrested him.  *Id.*, ¶¶ 23-46.

Defendants contend that there was probable cause to believe Plaintiff violated N.M.S.A. § 30-22-1(D).  However, accepting the facts in the Complaint as true and viewing them in the light most favorable to Plaintiff, this position is contrary to the Tenth Circuit Court of Appeals decision in *Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008).  In *Keylon*, the defendant officer went to the scene of an alleged crime, and was informed by the alleged victim that the plaintiff was the alleged criminal's mother.  *Id.* at 1213.

> [The officer] informed [the plaintiff] that her son was the subject of a felony investigation, and that he would need to get some information from her.  He asked [the plaintiff] her son's birthday and address, and she responded that she did not know.
>
> Believing that she was being "untruthful and evasive," [the defendant officer] asked for [the plaintiff]'s identification.  [The plaintiff] did not produce identification, and instead approached her van.  [The defendant officer] put his hand up, preventing [the plaintiff] from getting

in.  He asked her where her identification was, and she told him that it was in her purse, which was in the house.  She started walking up the driveway towards her home, at which point [the defendant officer] said, "Ma'am, I need to see your ID."  [The plaintiff] responded, "Well, I'll get my ID when I'm ready."  [The defendant officer] then placed her under arrest for concealing her identity, in violation of N.M. Stat. Ann. § 30-22-3.  All of this occurred on the sidewalk and lawn in front of [the plaintiff]'s home.

*Id.* (internal citations omitted).

In order to arrest someone for concealing identity, "there must be reasonable suspicion of some predicate, underlying crime."  *Id*. at 1216.  The underlying crime to which the defendant officer pointed was the statute at issue here -- N.M.S.A. § 30-22-1(D).  As here, the *Keylon* plaintiff had refused to follow the officer's instructions by walking toward her van and toward her home.  *Id*. at 1213.  The officer argued that she had given "evasive" answers to his questions which constituted "resisting" under the statute.  *Id*. at 1216.  Nonetheless, the Court of Appeals found that these facts did not constitute reasonable suspicion of the crime of resisting a peace officer.  *Id*. at 1216-17.  The Court explained that "[u]nder New Mexico law, 'resisting, evading, or obstructing an officer primarily consists of physical acts of resistance.'"  *Id*. at 1216 (*quoting State v. Wade*, 100 N.M. 152, 153 (Ct. App. 1983)).  Because the plaintiff had not engaged in any physical act of resisting prior to her arrest, her conduct would not constitute a violation of the statute under this theory.  *Id*. at 1216-17.  Next, the Court noted that, while using "fighting words" could violate the statute, the plaintiff had not done so even if her answers were evasive.  *Id*. at 1217.  Without either of these prerequisites, the defendant

officer "did not have probable cause to believe that she had violated § 30-22-1." *Id.*

Moreover, on the question of qualified immunity, the Tenth Circuit held that "the

district court should have found, as a matter of law, that [the plaintiff] ha[d] shown that

her constitutional right 'was clearly established [ ] such that a reasonable person in the

defendant's position would have known that his conduct violated that right.'" *Id.* at

1220 (some brackets in original).

Notwithstanding *Keylon*, a subsequent New Mexico case suggests a third

category of circumstances which would support a charge for resisting under § 30-22-1.

In *City of Espanola v. Archuleta*, No. 28,620, 2010 WL 3997984  (N.M. Ct. App. Feb. 5,

2010), officers encountered a defendant standing in public with a shotgun.  They

instructed the man to put his gun down.  *Id.* at *1.  The man eventually did so, but

placed the shotgun on the hood of a truck next to him.  *Id*.  He then reached into his

sweatshirt, retrieved a mobile phone, and proceeded to make a call.  *Id.*  The officers

instructed the man to end his phone call and get on the ground, but he did not.  *Id.*

The *Archuleta* court reviewed state jurisprudence regarding § 30-22-1(D) to

determine whether such conduct would violate the statute.  Id. at *2-*3.  In particular,

the court relied on the opinion in *State v. Diaz*, 121 N.M. 28 (Ct. App. 1995).  In *Diaz*,

> officers responded to a domestic violence report and found an intoxicated
> defendant yelling and waving a knife at his wife.  They drew their
> weapons and ordered the defendant to drop the knife, but he refused to
> do so.  *Id.*  When the five officers "repeatedly ordered [the d]efendant to
> 'put down,' 'drop,' or 'throw' the knife," he backed down the road away
> from them and refused their commands.

*Archuleta*, 2010 WL 3997984 at *3 (*citing and quoting Diaz*, 121 N.M. at 29-30).  On appeal,

the *Diaz* court had held that the "jury should have been instructed on Resisting an

Officer under Section 30-22-1(D)."  *Id*.  Based on *Diaz*, the *Archuleta* court interpreted the

statute "to include a prohibition of a defendant's active and defiant refusal to comply

with lawful officer demands."  *Id*. at *4.  Therefore, Archuleta's refusal to obey the

officers constituted "resisting" under the statute.[8]  *Id*.

Still, the case law does not support the proposition that refusing to comply with

any directive given by a peace officer would violate section 30-22-1(D).  Both *Diaz* and

*Archuleta* involved an officer giving lawful commands to an individual who was armed

with a weapon.  Given the nature of such a circumstance, the officers in each case had

the authority to demand compliance with their orders.  If, on the other hand, an officer

is simply giving directions with which he cannot demand compliance, then a mere

refusal to obey would not support a conviction under section 30-22-1(D).  This

limitation is consistent with the general rule that physical resistance or fighting words

are required to violate the statute because it prevents the *Diaz* and *Archuleta* exception

from swallowing that rule.  Moreover, it is consistent with the statute's requirement that

---

[8]  The court still reversed the defendant's conviction because he was not prosecuted under the state
statute but instead under a municipal ordinance.  According to the court, the city "unlike the state, ha[d]
chosen to more minutely define its statutory scheme by enacting two municipal ordinances" which
related to defendant's conduct.  *City of Espanola v. Archuleta*, No. 28,620, 2010 WL 3997984, *4  (N.M. Ct.
App. Feb. 5, 2010)  Because the court concluded that defendant was charged with the wrong ordinance,
his conviction was overturned.  *Id*. at *4-*5.

one must resist a peace officer "in the lawful discharge of his duties." *See* N.M.S.A. §

30-22-1(D).

The instant case provides a useful example of this distinction in action. If, as

Defendants contend, Plaintiff was "interfer[ing] with Defendant Deputies' lawful duties

by defiantly remaining 'standing on his property' and 'becoming defensive,'" then they

could have demanded that he comply with their orders to return to his store in order to

control the scene of the *Terry* stop. *Doc. 12* at 12-13. If, instead, Plaintiff's presence and

conduct was not interfering with the *Terry* stop, then the Court can see no basis for the

officer's authority to demand Plaintiff return to his store. Taking the facts in the

Complaint as true and viewing them in the light most favorable to Plaintiff, the Court

must at this stage conclude that Plaintiff was not interfering with the *Terry* stop.[9] As

such, the Court cannot now conclude that the officers had the authority to order

Plaintiff to return to his store. Without that, probable cause to believe that Plaintiff

violated section 30-22-1(D) would not exist. If probable cause did not exist, then

Plaintiff's Complaint sufficiently alleges that his arrest and prosecution violated his

constitutional rights.[10]

Plaintiff must also establish that the allegedly violated rights were clearly

established. "[I]t of course has long been clearly established that knowingly arresting a

---

[9] For just one example, there are no facts regarding the distance between Plaintiff and the ongoing *Terry* stop.

[10] With respect to Counts I and II, Defendants' Motion to Dismiss does not argue that the Complaint fails to sufficiently allege the remaining elements of an unlawful arrest or unlawful prosecution claim. *See e.g. Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

defendant without probable cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment's proscription against unreasonable searches and seizures." *Wilkins*, 528 F.3d at 805. As described above, New Mexico and federal courts have held that section 30-22-1(D) can be violated only by (1) physical resistance; (2) fighting words; or (3) disobeying orders from an officer to which he had the authority to demand compliance. For the purposes of the Motion to Dismiss, the rights allegedly violated by Defendants were clearly established.[11]

Therefore, Defendant's motion for dismissal of Counts I and II,[12] must be denied.

*Count III: Excessive Force*

Plaintiff asserts Count III against Defendants Pestak, Ortega, and Trejo. *Doc. 1*, Ex. B. at 10. Plaintiff argues that Defendants Pestak, Ortega, and Trejo improperly employed excessive force under the circumstances when they arrested Plaintiff in violation of Plaintiff's Fourth Amendment rights, and that their actions in the arrest "were willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's rights." *Id.* ¶¶ 66-76.

---

[11] Defendants do not argue that, even if no probable cause existed, they reasonably believed that it did. Even if they had, a determination that the mistake was reasonable would require more facts than those found in the Complaint.

[12] With respect to Count I, Defendants argue at some length that they participated in a lawful temporary seizure of Plaintiff's real property for the purposes of conducting a *Terry* stop of the third party. *Doc. 12* at 8-11. As described above, the circumstances of the *Terry* stop are relevant to the existence of probable cause for the alleged "resisting" violation. However, Defendants also seem to construe Count I of Plaintiff's Complaint to make a claim that his real property was illegally seized. The Court does not find such a claim in Count I and instead finds only a claim that his person was illegally seized. Thus, the Court does not further discuss Defendants' arguments regarding the seizure of the real property.

A court's analysis of a § 1983 claim alleging excessive force begins with *Graham v. Connor*, 490 U.S. 386 (1989). "All claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Id.* at 395 (emphasis omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The Court focuses on four factors in evaluating the reasonableness of a defendant officer's use of force against a § 1983 plaintiff: (1) the severity of the plaintiff's crime, (2) whether the plaintiff poses an immediate threat to the safety of the officers or others, (3) whether the plaintiff actively resists arrest or attempts to flee, and (4) whether a defendant officer's reckless or deliberate conduct contributed to the need for the force employed. *Fogarty v. Gallegos*, 523 F.3d 1147, 1159 (10th Cir. 2008).

"[I]n a case where police effect an arrest without probable cause . . . but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

The Complaint describes a violent arrest of a 72 year-old man. *See doc. 1*, Ex. B, ¶ 23-30 (Defendants "ripped Plaintiff's shirt, … slamm[ed] Plaintiff up against patrol unit, … twist[ed] Plaintiff's arm, causing him a great deal of pain, … struck Plaintiff from

behind the knees, taking him to the ground …").  The arrest was so forceful that

Plaintiff "felt that he was having a heart attack" and ambulances were called.  *Id.*, ¶31-

37.

       Defendants argue that "Plaintiff's resistance and obstruction . . . could objectively

be seen as a reasonable threat, or potential threat, to Defendant Deputies' safety."  *Doc.*

*12* at 16.  To support the claim that Plaintiff resisted and obstructed, Defendants point to

the following facts in the Complaint: (1) Defendant Pestak "tried" to handcuff Plaintiff;

(2) Defendant Ortega was "attempting" to place Plaintiff's arm behind his back; (3)

Defendant Trejo "was attempting to gain control" of Plaintiff; and (4) "Plaintiff Goton

stated he would remain standing on his property, becoming defensive."  *See id.*

Defendants infer from these facts that Plaintiff resisted and was "not … an easy person

to arrest."  *Id*.  Therefore, they conclude that "Defendant Deputies exercised reasonable

force while effecting Plaintiff's arrest."  *Id*.

       Indeed, this narrative might be borne out in the evidence.  However, to reach this

conclusion, one must make inferences from the facts in favor of Defendants.  In a

Motion to Dismiss however, the Court must view the facts in the light most favorable to

Plaintiff.  Viewed in that light and considering the *Fogarty* factors, the Court must

conclude that Plaintiff has presented a plausible claim that the officers used excessive

force.

Although Plaintiff's Complaint alleges a plausible violation of his right to be free from excessive force, Defendants are still entitled to qualified immunity from those claims unless "[D]efendants' use of force violated clearly established law." *Fogarty*, 523 F.3d at 1161 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  It is clear that uses of force that are not objectively reasonable are unconstitutional.  *Graham*, 490 U.S. at 395.  However, that fact "does not mean that it is always clear *which* uses of force are unreasonable."  *Casey*, 509 F.3d at 1284.  In the context of excessive force claims, the Court must apply "a sliding scale to determine when law is clearly established.  The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Id*. (internal quotation marks omitted).  For example, "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest."  *Casey*, 509 F. 3d at 1285.

The applicability of a sliding scale and the necessity to compare each case's facts to those in prior cases make it apparent that the "clearly established" analysis in excessive force cases is particularly fact-bound.  Consequently, dismissing an excessive force claim on this basis pursuant to the 12(b)(6) motion is appropriate only in the most obvious of cases.  The instant case is not such a case.

Thus, the Court will deny the Motion as to Count III.

*Count IV: Retaliation for Plaintiff's Exercise of First Amendment Rights*

It is useful to recount Plaintiff's factual allegations relevant to this charge. Plaintiff first inquired about who was in charge. *See doc. 1*, Ex. B, ¶ 17.  When Defendant Pestak indicated that he was in charge, Plaintiff asked him to move the vehicles which were blocking access. *Id.*, ¶ 18.  Defendant Pestak then directed Plaintiff to "return to his store or he would be arrested." *Id.*, ¶ 19.  Plaintiff "**stated** that he would remain standing on his property." *Id.*, ¶ 20 (emphasis added).  Defendant Pestak then "informed Plaintiff that he would be arrested." *Id.*, ¶ 21.  Plaintiff responded by "ask[ing] what he was being arrested for, and on what charges." *Id.*, ¶ 22.  At that time, Defendants Pestak, Ortega, Trejo and Reid arrested him. *Id.*, ¶¶ 23-46.

Plaintiff admits that his statements during this exchange involved "strong language." *Id.*, ¶ 81.  He describes this encounter as his exercise of "his First Amendment right to nonviolently express his displeasure at being interrupted from his daily business and operation of his small store." *Id.*, ¶ 79.

Defendants make two arguments with respect to Count IV.  The first argument is essentially a claim of factual impossibility. *Doc. 12* at 17-18.  They point to the fact that, before he made any statements, Plaintiff was informed that he would be arrested if he did not return to his store.  "Plaintiff had not yet indicated any intent to 'protest,' nor had Defendant Pestak indicated any other basis for an arrest other than if Plaintiff

refused to move . . . ." *Id.* at 17.  Therefore, Defendants reason, the basis for the arrest

could not be retaliation for Plaintiff's subsequent statements.

Again, the flaw in Defendants' logic is that it fails to view the alleged facts in the

light most favorable to Plaintiff as the Court must in ruling on a motion to dismiss.  For

example, one plausible inference from the Complaint is that, while Defendant Pestak

threatened the arrest earlier, he only proceeded with it in response to Plaintiff's

impertinence.  With such an inference, Plaintiff has made a claim sufficient to survive a

motion to dismiss under Rule 12(b)(6).[13]  *See Hartman v. Moore*, 547 U.S. 250, 256 (2006)

("law is settled that as a general matter the First Amendment prohibits government

officials from subjecting an individual to retaliatory actions . . . for speaking out").

Defendants' second argument is that, to the extent that the arrest was a

restriction on Plaintiff's speech, it was either (1) a permissible "time, place, and manner

restrictions" or (2) incidental to a lawful restriction of Plaintiff's non-speech activity.

*Doc. 12* at 18-20.  Both prongs of this argument, however, rely on the appropriateness of

the arrest.  As explained above, at this stage Defendants have not established that the

arrest and subsequent prosecution was justified by probable cause.  Therefore, the First

Amendment claim cannot be dismissed on this basis.

Thus, the Court will deny the Motion as to Count IV.

---

[13] Except in the context of Defendants' second argument described below, Defendants do not argue that Plaintiff's remarks were not "constitutionally protected speech."

**State Constitutional Claims**

Defendants also seek dismissal of the state constitutional claims in Count V. Defendants first incorporate their argument that the seizure was permissible under the protections of the federal constitution.  *Doc. 12* at 21.  Defendants next note that Plaintiff has not explained why the state protections should be more expansive.  *Id.* at 22 (*citing State v. Maez*, 147 N.M. 91 (Ct. App. 2009).  Therefore, Defendants reason, the state claim should fail along with the federal claim.

This argument is unpersuasive.  First, as explained above, at this stage Defendants have not established that the arrest and subsequent prosecution were justified by probable cause.  Therefore, the first premise of the argument fails.  Second, even if Defendants establish that the federal constitution was not violated, the state constitution may provide broader protections.  *See State v. Gomez*, 122 N.M. 777, 783 (1997)  Thus, notwithstanding Defendants' peculiar application of the "interstitial approach," the failure of the federal claim would not, by itself, foreclose the state constitutional claim.

The Court will deny the Motion as to Count V.

**Dismissal Under New Mexico Tort Claims Act**

New Mexico's "Tort Claims Act" provides that it "shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act . . . ."  N.M. Stat. Ann. § 41-4-17(A).  According

to the Tort Claims Act, a "governmental entity and any public employee while acting

within the scope of duty are granted immunity from liability for any tort except as

waived by . . . Sections 41-4-5 through 41-4-12 NMSA 1978."  Under § 41-4-12:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA
> 1978 does not apply to liability for personal injury, bodily injury, wrongful
> death or property damage resulting from assault, battery, false
> imprisonment, false arrest, malicious prosecution, abuse of process, libel,
> slander, defamation of character, violation of property rights or
> deprivation of any rights, privileges or immunities secured by the
> constitution and laws of the United States or New Mexico when caused by
> law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12.

*Counts VI, VII and VIII*

These counts include Plaintiff's state claims of battery/excessive force, false

imprisonment/arrest, and malicious prosecution/abuse of process respectively.

Defendants' argument to dismiss these counts is a restatement of their earlier

arguments that (1) Plaintiff has failed to sufficiently allege the excessiveness of force

and (2) the existence of probable cause dictates dismissal of such claims.[14]  *Doc. 12* at 22-

26.  As the Court has rejected those arguments on the federal claims, they fail as to the

state claims as well.

The Court will deny the Motion as to Counts VI, VII and VIII.

---

[14] Defendants also make the off-handed statement that "it is clear from the allegations that Plaintiff's
arrest was not a result of 'maliciousness.'"  *Doc. 12* at 25.  This comment may be a reference to the earlier
argument regarding the motivation of the officers as it relates to the First Amendment claim.  If so, the
argument is rejected as explained above.  *See supra* at 29-31.  To the extent that this remark is meant to be
a separate argument, it is inadequate to justify further analysis.

Wherefore, **IT IS HEREBY ORDERED** that Sierra County will be substituted for Defendant Sierra County Sheriff's Department and the Clerk shall amend the docket to reflect this substitution.

**IT IS FURTHER ORDERED** that all punitive damage claims against Defendant Sierra County are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the claims against Defendant County, Defendant Jeff Jones (in his personal capacity) and any individual Defendant "in his/her official capacity" contained in Counts I through IV are dismissed without prejudice.

**IT IS FURTHER ORDERED** that all punitive damages claims contained in Counts V, VI, VII and VIII are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the remainder of Defendants' Motion to Dismiss is **DENIED**.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**