IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES GOTON,

      Plaintiff,

v.                                No. CIV 12-0194 GBW/SMV

Sierra County Sheriff's Deputies
NOAH THOMAS PESTAK, LUIS ORTEGA,
JOE TREJO, JEFF JONES, CLAYTON REID, and
BOARD OF COUNTY COMMISSIONERS OF
SIERRA COUNTY,

      Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

    This matter comes before the Court on Defendant Pestak's Motions for Summary Judgment as to Counts III and VI (*doc. 63*) and I, II, IV, V, VII, and VIII (*doc. 119*). The Court, having reviewed the accompanying briefing (*docs. 64, 83, 88, 130, 135*) and being fully advised, GRANTS in part AND DENIES in part each of the Motions for Summary Judgment.

## I.    BACKGROUND

    Plaintiff is a 74 year old man who operates a gas station in Caballo, New Mexico. *Doc. 1*, Ex. B ¶¶ 1, 7.  On May 16, 2011 at about 5:50 a.m., Plaintiff was working at the gas station when the U.S. Border Patrol pulled over Dennis Siivola for driving erratically, parking their official vehicles in front of the gas station pumps. *Id*. ¶¶ 8-10.

1

The Border Patrol agents moved their vehicles at Plaintiff's request, but shortly thereafter Defendants Pestak, Ortega, Reid, and Jones—officers of the Sierra County Sheriff's office—arrived at the gas station in separate trucks and parked in front of Plaintiff's gas pumps. *Id.* ¶¶ 11, 13-16.  Plaintiff approached Defendant Pestak about moving the vehicles and became engaged in a verbal altercation with Defendant Pestak. *Id.* ¶¶ 17-20.  The Defendants on the scene then attempted to arrest Plaintiff.  *Id.* ¶¶ 21-26.  Plaintiff told Defendants that he was experiencing symptoms of a heart attack and an ambulance was called. *Id.* ¶¶ 31, 34-35.  After being treated by first responders, Plaintiff declined further medical care and was formally arrested.  *Id.* ¶¶ 35-37, 39. Plaintiff was taken to the Sierra County Detention Center, booked, and released on bond.  *Id.* ¶¶ 44-48.  Plaintiff was charged with obstruction of an officer.[1]  *Id.* ¶ 49.  The charges were dismissed on September 19, 2011.  *Id.* ¶¶  49, 51.

Plaintiff filed his complaint in state court on January 31, 2012.  *Id.*  The Complaint sets forth four federal causes of action: (1) unreasonable seizure in violation of the Fourth Amendment as against all Defendants; (2) prosecution without probable cause in violation of the Fourth and Fourteenth Amendments as against Defendant Pestak; (3) excessive force in violation of the Fourth Amendment as against Defendants Pestak, Ortega, and Trejo; (4) retaliation in violation of the First Amendment as against all Defendants.  It also contains four state causes of action against all Defendants: (5)

---

[1] *State v. James P. Goton*, Docket No. M-51-MR-2011-00171.

unreasonable search and seizure in violation of the New Mexico Constitution; (6)

tortious battery, personal injury, and excessive force under the New Mexico Tort Claims

Act; (7) false imprisonment and arrest under state law; and (8) malicious prosecution

and abuse of process under state law. *Id.* ¶¶ 53-98.

The Court dismissed Counts I and IV against Defendant Sierra County and

Defendant Jones on July 12, 2012. *Doc. 28*. Defendant Pestak then filed the two instant

motions for summary judgment, which together address all claims against him in the

Complaint. *See docs. 63, 119*. Briefing was complete on Defendant Pestak's motions as of

February 13, 2013. *See docs. 89, 136*.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires that a party seeking summary

judgment demonstrate that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In our circuit,

the moving party carries the burden of showing beyond a reasonable doubt that it is

entitled to summary judgment." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979

(10th Cir. 2002) (*quoting Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991))

(internal quotations omitted).

Summary judgment is proper only if a reasonable trier of fact could not return a

verdict for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

movant bears the initial burden of "show[ing] that there is an absence of evidence to

support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex*, 477 U.S. at 323). Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

The court must adhere to three principles when evaluating a motion for summary judgment. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551–54

4

(1999).  Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477

U.S. at 255.  However, if the non-moving party's story "is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version

of the facts for the purposes of ruling on a motion for summary judgment."  *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).  In the end, "to survive the . . . motion, [the nonmovant]

need only present evidence from which a jury might return a verdict in his favor."  *Id*. at

257.

### III.   UNDISPUTED FACTS

1.  On May 16, 2011, Defendant Pestak was involved in a traffic stop involving a Mr.

    Dennis Siivola, who had been pulled over for driving erratically.  Due to the

    stop, Defendant Pestak entered on to Plaintiff's wife's property in Caballo, New

    Mexico. *Doc. 1*, Ex. B ¶¶ 7, 13-16; *Doc. 64* at 3, Ex. A at 131:24-132:2, Ex. B at 71:14-

    21; *Doc. 119,* Ex. B at 20:5-22:22, Ex. D.

2.  When Defendant Pestak entered the property, Border Patrol agents were already

    present at the scene.  *Doc. 119,* Ex. B at 20:5-8, Ex. D.

3.  Defendant Pestak assisted in detaining Mr. Siivola, and, prior to his encounter

    with Plaintiff, had handcuffed Mr. Siivola and placed him the back of his official

    vehicle.  *Id.,* Ex. B at 22:14-19 & 31:1-9, Ex. D.

4.   At some point after Defendant Pestak had detained Mr. Siivola, Plaintiff

approached the deputies and asked them who was "in charge."  *Doc. 64*, Ex. A at

132:22-133:1; *Doc. 119*, Ex. B at 35:16-21.

5.   In response to Plaintiff's question, Defendant Pestak identified himself by name

and affirmed that he was in charge.  *Doc. 64*, Ex. A at 134:8-14.

6.   Plaintiff then asked Defendant Pestak if he could move the police vehicles, and

Defendant Pestak responded by instructing him to return to the store located on

the property.  *Id.* at 134:15-17, Ex. C at 36:11-13, 38:1.

7.   Plaintiff did not return to the store as instructed.  *Id.*, Ex. A at 136:14-20, Ex. C at

38:15-22.  When Plaintiff did not return to the store, Defendant Pestak instructed

Plaintiff to put his arms behind his back and attempted to restrain him with the

assistance of other officers. *Doc. 64* at 4, Ex. A at 136:14-20-137:22, Ex. C at 55:10-

12.

8.   When Defendant Pestak moved to restrain Plaintiff, Defendant Pestak threatened

to use his Taser on Plaintiff.  *Doc 64*, Ex. A at 137:24-25.  Defendant Pestak did not

actually tase Plaintiff. *Id.*, Ex. A at 138:23-24, Ex. C at 63:6-8.

9.   Plaintiff was "not struggling, but [not] giving in", and stated that he was "not

allowing" the officers, including Defendant Pestak, to handcuff him as they

attempted to arrest him.  *Id.*, Ex. A at 138:1-8, 138:25-140:12.  Plaintiff did resist

arrest for an indeterminate amount of time.  *Id.*, Ex. A at 149:5-17, Ex. C at 55:18-19.

10. Defendant Pestak said "take him to the ground" and Plaintiff was then hit and fell to the ground, but he could not identify which officer hit him.  *Doc. 64*, Ex. A at 149:5-21, 146:11-15.

11. After Plaintiff was hit, Plaintiff stated that he felt that he was having a heart attack.  *Id.*, Ex. A at 149:22-25, Ex. C. at 63:25-64:3.

12. At some point soon thereafter, Plaintiff was allowed to stand up.  *Id.*, Ex. A at 150:1-7, Ex. C at 64:1-3; *Doc. 119*, Ex. C at 77:17-78:9.

13. Plaintiff was treated by EMTs for an indeterminate length of time.  *Doc. 119*, Ex. B at 63:25-64:3, Ex. C at 78:2-8.

14. While Plaintiff was being treated by the EMTs, Defendant Reid contacted Mercedes C. Murphy, a Deputy District Attorney for the State of New Mexico.  *Id.*, Ex. E ¶¶ 2, 11.

15. Defendant Reid gave Ms. Murphy his account of the sequence of events leading up to Plaintiff's medical treatment. Ms. Murphy then advised Defendant Reid that he had probable cause to arrest Plaintiff for a violation of N.M. Stat. § 30-22-1, resisting, obstructing, or evading a law enforcement officer.  *Id.*, Ex. E.

16. Defendant Reid then put Plaintiff in Defendant Pestak's vehicle.  *Id.*, Ex. B at 76:13-17.

7

17. Defendant Pestak transported Plaintiff to the Sierra County Detention Center, from which Plaintiff was subsequently released on bond.  *Doc. 1*, Ex. B ¶¶ 44-48.

18. Later that day, Defendant Pestak filed a criminal complaint against Plaintiff for a single count of violating N.M. Stat. § 30-22-1(D).  *Doc. 119*, Ex. E ¶ 12, Ex. F.

19. The State entered a *nolle prosequi* on September 19, 2011, thereby dismissing the criminal complaint. *Id.*, Ex. G.

## IV.   PLAINTIFF'S FEDERAL CLAIMS

Plaintiff brings four federal claims.  In Counts I and III, Plaintiff alleges that Defendant Pestak violated his Fourth Amendment rights when he detained, arrested, and charged him with a crime without probable cause and used excessive force during the arrest.  *Doc. 1* ¶¶ 54-56, 67-70.  In Count II, Plaintiff alleges that Defendant Pestak violated his Fourth and Fourteenth Amendment rights by charging Plaintiff with a violation of N.M. Stat. § 30-22-01 without probable cause.  *Id*. ¶¶ 60-64.  In Count IV, Plaintiff alleges that Defendant violated his First Amendment right to freedom of speech by arresting him in retaliation for making statements to Defendant Pestak and the other Defendants before and during his arrest.  *Id*. ¶¶ 78-83.  Defendant Pestak argues that he is entitled to qualified immunity from all four counts.

### A.  Qualified immunity standard

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff who must clear two hurdles to defeat the defendant's motion.  The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (citations omitted). "A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right...." *Id.*  Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

**B.      Count I (Unlawful Seizure)**

    **1.      A Reasonable Jury Could Find that Plaintiff's Fourth Amendment Rights Were Violated**

Plaintiff argues that he was subjected to unlawful seizure when Defendant Pestak arrested him without probable cause.  The Fourth Amendment protects Plaintiff against unreasonable seizures.  U.S. Const. Amend. IV.   An officer may effect a warrantless arrest if he "has probable cause to believe that a person committed a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (citation and quotation

omitted). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 1116 (*quoting United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). Whether Defendant Pestak unlawfully seized Plaintiff, therefore, hinges on whether he reasonably believed that Plaintiff had committed or was committing a crime.

Defendant Pestak claims that he reasonably believed Plaintiff had violated N.M. Stat. § 30-22-1(D) when Plaintiff failed to comply with his order to return to the gas station store. *Doc. 119* at 3. Section 30-22-1(D) prohibits "resisting or abusing any . . . peace officer in the lawful discharge of his duties." N.M. Stat. 30-22-1(D). As this Court explained in its July 12, 2012, order granting in part and denying in part Defendants' motion to dismiss, noncompliance with an officer's order is only a violation of § 30-22-1(D) if the officer had authority to issue the order. *Doc. 28* at 23-24. The issue here, therefore, is whether Defendant Pestak had the authority to order Plaintiff to return to the store.

Defendant Pestak argues that the *Terry* stop of Mr. Siivola justified his issuance of the order for Plaintiff to return to the gas station. *Doc. 119* at 15-16. Defendant Pestak is correct that during a *Terry* stop, officers are "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo

during the course of [a Terry] stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985); *see also Cortez*, 478 F.3d at 1130 (10th Cir. 2007). Thus, the question of Defendant Pestak's authority to order Plaintiff to return to the store rests on whether that order was reasonably necessary for officer safety and/or to maintain the status quo of the *Terry* stop of Mr. Siivola. It is here that material factual disputes exist which prevent the Court from agreeing with Defendants as a matter of law.

Under Plaintiff's version of events, at a time where the officers were "just standing there," he approached and asked "[w]ho was in charge." *Id.*, Ex. A at 132:22-133:6. After being told that Defendant Pestak was in charge, Plaintiff asked if Defendant Pestak "[c]ould move these vehicles?" *Id.*, Ex. A at 134:5-16. According to Plaintiff, Defendant Pestak simply responded, "Go back in the store." *Id.*, Ex. A at 134:17. When Plaintiff did not comply, Defendant Pestak grabbed Plaintiff to place him under arrest. *Id.*, Ex. A at 136:14-137:9. If a jury accepts Plaintiff's testimony, then no reasonable officer could conclude that Plaintiff was endangering officer safety or interfering with the *Terry* detention of Mr. Siivola. It therefore follows that, under those facts, no reasonable officer could believe that Plaintiff was violating N.M. Stat. § 30-22-1(D) by not returning to the interior of the gas station.

Defendant Pestak presents a different version of events. But, nothing in the record, such as Defendant Pestak's video recorder, "blatantly contradict[s]" Plaintiff's story such "that no reasonable jury could believe it." *See Scott*, 550 U.S. at 380. The only

11

item in the record capable of such contradiction would be Defendant Pestak's video

recorder.  However, it does not appear to show any interactions with Plaintiff, let alone

the one leading to his arrest.  In fact, it appears to show that, prior to any interaction

between Plaintiff and Defendant Pestak, Mr. Siivola was placed handcuffed in the

police vehicle with the officers relaxed and in total control of the situation.  *Id.*, Ex. D.

Moreover, the fact that Defendant Pestak switched off his lapel video itself could lead to

an inference that he no longer believed he was engaged in the *Terry* stop.

Construing the facts in the light most favorable to Plaintiff as the non-moving

party, Defendant Pestak did not have any basis on which to issue a lawful command

ordering Plaintiff to return to the gas station.  And because the command was not

lawful, Plaintiff's noncompliance did not give Defendant Pestak probable cause to

arrest him for a violation of § 30-22-1.  Therefore, Plaintiff has demonstrated that

Defendant Pestak violated his Fourth Amendment right to be free from a warrantless

arrest without probable cause.

### 2.    Plaintiff's Right Was Clearly Established

Defendant Pestak argues that even if he unlawfully seized Plaintiff, he is

nonetheless entitled to qualified immunity because the law regarding what constitutes

conduct in violation of § 30-22-1(D) is unsettled.  To determine whether a right is clearly

established, the Court must "assess[] the objective legal reasonableness of the action at

the time of the alleged violation and ask[] whether the right was sufficiently clear that a

reasonable officer would understand that what he is doing violates that right." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2008) (quotation and citation omitted). For a right to be clearly established, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "Though a plaintiff is not required to show that the specific conduct was previously found to have been held unlawful, there must be a substantial correspondence so that the unlawfulness was apparent [to the officer]." *Herring v. Keenan*, 218 F.3d 1171, 1179 (10th Cir. 2000) (citation omitted).

The question therefore is whether a reasonable officer in Defendant Pestak's position would realize that Plaintiff had the right to refuse to obey his command to return to the gas station building and that he therefore did not have probable cause for the subsequent arrest. Defendant Pestak argues that a reasonable officer would believe that Plaintiff's failure to comply with Defendant Pestak's request would constitute a violation of § 30-22-1(D), citing *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008). *Doc. 119* at 18-19. That case, however, involves the Sixth Circuit's interpretation of a Michigan city ordinance, a different statute (albeit with similar language) than the one at issue here. *Id.* at 610-11.

More pertinent to the Court's assessment of the statute at issue here—N.M. Stat.

§ 30-22-1—is *Manzanares v. Higdon*, 575 F.3d 1135 (10th Cir. 2009).  There, the police

sought and received permission to question Mr. Manzanares in his home because he

possessed information about a suspect.  *Id.* at 1140.  Mr. Manzanares himself was not

suspected of committing any crime.  *Id.*  After cooperating with the police for a period

of time, Mr. Manzanares asked the officers to leave, and, when they refused, became

"agitated."  *Id.*  The police then handcuffed him, removed the handcuffs for a period of

time, handcuffed him again, and placed him in the back of a squad car for hours while

they investigated and arrested the suspect.  *Id.* at 1141.  They then released Mr.

Manzanares.  *Id.*  Mr. Manzanares subsequently sued, arguing the police had violated

his Fourth Amendment rights when they arrested him without probable cause.  *Id.*

The Tenth Circuit found Mr. Manzanares' conduct could not have led the police

to reasonably believe that he was resisting or obstructing an officer within the definition

of § 30-22-1(D).  *Id.* at 1144.  The Court specifically noted that the only "obstruction"

created by Mr. Manzanares' non-compliance was his refusal to continue to cooperate

with the police, and that Mr. Manzanares did not physically impede the investigation in

any way.  *Id.* at 1145 & n.8.  The Court further observed that there was no indication

that Mr. Manzanares' relationship with the suspect implicated Mr. Manzanares in any

criminal activity.  *Id.* at 1144.

The Tenth Circuit similarly reversed a grant of summary judgment in *Storey v.*

*Taylor*, 696 F.3d 987 (10th Cir. 2012).  There, a police officer responded to a report of

domestic conflict.  *Id.* at 990.  When the officer arrived at Mr. Storey's home, he

questioned Mr. Storey while Mr. Storey remained in his doorway.  *Id*. at 990-91.  After

responding to several questions, Mr. Storey declined to answer a question and the

police officer ordered him to step out of the house.  *Id.* at 991.  When Mr. Storey refused,

the officer physically removed Mr. Storey from his house and handcuffed him.  *Id.*  The

officer informed Mr. Storey that he was charging him with resisting a police officer in

violation of § 30-22-1(D).  *Id.* at 991-93 & n.6.  In denying the officer qualified immunity,

the court noted that the key issue was whether the order itself was lawful.  *Id*. at 993.

The court held that the order was not lawful because the officer did not have probable

cause to believe Mr. Storey committed a criminal offense.  *Id.* at 993-997.

Like the officers in *Manzanares* and *Storey*, Defendant Pestak was aware that

Plaintiff was not involved in Mr. Siivola's wrongdoing.  Nor, under Plaintiff's version of

events did he physically interfere with Defendant Pestak's investigation or threaten the

safety of Defendant or his fellow officers. The Court finds, based on the facts as

described above in Section I.B.1, that there is sufficient legal and factual correspondence

between the situations described in *Mazanares* and *Storey* to put Defendant Pestak on

notice that Plaintiff's noncompliance with his command to go inside was not a violation

of § 30-22-1(D).

The Court denies qualified immunity on Count I.

      **C.**     **Count II (Prosecution without Probable Cause)**

Count II of Plaintiff's complaint concerns Plaintiff's claim of malicious prosecution in violation of the Fourth and Fourteenth Amendments. As a constitutional claim, malicious prosecution violates both an individual's Fourth Amendment right to be free from unreasonable seizure and Fourteenth Amendment right to due process. *Miller v. Spiers*, 339 F. App'x 862, 867 (10th Cir. 2009). The common law of tort of malicious prosecution is the starting point for determining the contours of a constitutional malicious prosecution claim under § 1983. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1257-58 (10th Cir. 2007). "The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id.* at 1258.

Plaintiff's claim fails on the favorable termination prong. As Defendant Pestak points out, a resolution of *nolle prosequi* is not, in and of itself, a favorable termination. *Doc. 119* at 22; *Wilkins v. DeReyes*, 528 F.3d 790, 802-03 (10th Cir. 2008). "To decide whether a *nolle prosequi* constitutes a favorable termination, we look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Id.* at 803 (citation omitted). Plaintiff bears the burden of showing favorable termination by demonstrating

16

that the prosecution's decision not to proceed against him arose from a lack of
reasonable grounds for prosecution, instead of a compromise, plea for mercy, or
misdeed on Plaintiff's part.  *Id.* at 802-03.

Ms. Murphy's affidavit does not discuss her decision to discontinue prosecution,
and the dismissal *nolle prosequi* only states that it is "in the best interest of justice," a
phrase which, in and of itself, gives no indication of the motive behind the dismissal.
*Doc. 119*, Exs. E, G.  Plaintiff, for his part, does not provide evidence to suggest that the
termination of the criminal action was indicative of his innocence, nor does he argue
any of the details of the termination in his complaint.  *Doc. 1*, Ex. B ¶¶ 49-51, 59-65.  In
the absence of such evidence, no reasonable juror could find that the termination of the
State's prosecution was favorable.  The Court therefore grants Defendant Pestak's
motion for summary judgment as to Count II.

**C.     Count III (Excessive Force)** [2]

Plaintiff contends that Defendant Pestak used excessive force in violation of the
Fourth Amendment when he "caused injuries and pain to his arms and legs,
aggressively shoved him against their police vehicles, and forcibly took Plaintiff to the
ground."  *Doc. 1*, Ex. B ¶ 68.  "In order to recover on an excessive force claim, a plaintiff
must show … that the officers used greater force than would have been reasonably

---

[2] This case involves claims of both unlawful arrest and excessive force arising from the same incident.
Although the evidence for these two claims may overlap, the "inquiries are separate and independent."
*Cortez*, 478 F.3d at 1127.   Success on one claim does not ordain success on the other.  *Id*.

necessary to effect a lawful seizure….”  *Cortez*, 478 F.3d at 1129 n.25.[3]

A police officer uses excessive force during an arrest if his actions were not

“objectively reasonable in light of the facts and circumstances confronting [him].”

*Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Fisher v. City of Las Cruces*, 584 F.3d

888, 894 (10th Cir. 2009).  An evaluation of reasonableness requires a fact specific

evaluation of the totality of the circumstances surrounding the event at issue, made

from the perspective of “a reasonable officer on the scene.”  *Graham*, 490 U.S. at 396-97;

*Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009).  In evaluating the

reasonableness of the officer’s actions, the Court may consider, among other factors, (1)

the severity of the crime in question, (2) whether the suspect posed an immediate threat

to the safety of the officers or others, and (3) whether the suspect was actively resisting

or attempting to evade arrest.  *Graham*, 490 U.S. at 396.

Taking the three factors in turn, the Court first addresses the severity factor.

Section 30–22–1 provides that whoever resists, evades, or obstructs an officer commits a

misdemeanor, and misdemeanors are treated as non-severe in an excessive force

analysis.  N.M. Stat. §§ 30-1-6, 30-22-1(D); *Fisher*, 584 F.3d at 895.  Since Plaintiff’s only

alleged crime was a non-violent misdemeanor, the first factor favors Plaintiff.  As to the

immediacy of the threat, Plaintiff was an unarmed, seventy-two year old man who,

---

[3] Plaintiff must also show that “some actual injury [was] caused by the unreasonable seizure that is not *de minimis*, be it physical or emotional.”  *Cortez*, 478 F.3d at 1129, n.25.  However, Defendant has not argued that Plaintiff has not or cannot make this showing.  Thus, the Court will not address this prong.  *See Evans v. Vinson*, 427 F. App’x 437, 447 (6th Cir. 2011).

interpreting the facts in the light most favorable to him as the non-moving party, had

neither made verbal threats, nor acted in a physically threatening manner prior to the

arrest.  While the Court must view the arrest from the perspective of the reasonable

officer at the time rather than with "20/20 . . . hindsight," Defendant Pestak's decision to

grab Plaintiff with sufficient force to rip his shirt, throw him against a vehicle, and

attempt to forcibly handcuff him in the absence of evidence that Plaintiff posed a threat

to him constitutes a disproportionate reaction to the situation as Plaintiff describes it.

*Doc. 1*, Ex. B ¶¶ 23-28, *Doc.* 64 at 6; *Fisher*, 584 F.3d at 895.

The third factor—whether Plaintiff actively resisted arrest—is a closer call,

particularly as Plaintiff admits that he was "not allowing [the officers] to put handcuffs

on me" and had attempted to prevent the Defendant officers from taking him into

custody. *Doc. 64*, Ex. A at 140:11-12, 149:9-21.  Plaintiff's version of events, however, in

which he is grabbed, slammed against a vehicle, restrained, and only informed that he

was *actually* under arrest when Defendants Pestak and Ortega took him to the ground,[4]

creates a sufficient material dispute as to whether Officer Pestak's use of force was

excessive in relation to Plaintiff's actions.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278,

1282 (10th Cir. 2007) (finding that the tackling of a suspect was excessive force when

officer did not first inform suspect that he was under arrest and give the suspect a

---

[4] Plaintiff also alleges that he was hit behind the knees in order to take him to the ground and when on the ground was give "a couple of chops in the ribs." *Doc. 64*, Ex. A at 141:22-25, 146:1-22.  Plaintiff could not, however, identify which officer was responsible for any of those actions.  *Id.*, Ex. A, 149:19-25.

chance to submit peacefully to an arrest).

Where two *Graham* factors clearly weigh in Plaintiff's favor and the third is ambiguous, the Tenth Circuit has found it appropriate to deny summary judgment on the basis of qualified immunity. *See Herrera v. Bernalillo County Bd. of County Comm'rs*, 361 F. App'x. 924, 928-29 (10th Cir. 2010). Consequently, this Court therefore denies qualified immunity on Count III.

### D.     Count IV (Retaliation under the First Amendment)

Plaintiff's final federal claim states that Defendant Pestak violated Plaintiff's First Amendment rights when Defendant Pestak arrested and prosecuted Plaintiff for "nonviolently express[ing] his displeasure at being interrupted from his daily business and operation of his small store." *Doc. 1*, Ex. B ¶ 79. Plaintiff therefore makes two separate claims, one for retaliatory arrest and one for retaliatory prosecution.

#### 1.     Retaliatory Arrest

"[I]t has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Buck v. City of Albuquerque,* 549 F.3d 1269, 1292 (10th Cir. 2008) (*quoting Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005)). To state a retaliation claim under the First Amendment against a party who is neither Plaintiff's employer nor involved in a contractual relationship with him, Plaintiff must prove that (1) he was engaged in a constitutionally protected activity; (2) Defendant's actions caused him "to suffer an injury that would chill a person of

20

ordinary firmness from continuing to engage in that activity"; and (3) Defendants'

actions were "substantially motivated" as a response to Plaintiff's constitutionally

protected activity. *Leverington v. City of Colorado Springs,* 643 F.3d 719, 729 (10th Cir.

2011) (*citing Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). As the Supreme

Court explained in *Hartman v. Moore*, "official actions adverse to [a person engaging in

protected speech] might well be unexceptionable if taken on other grounds, but when

nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, . . .

retaliation is subject to recovery as the but-for cause [of the adverse action]." 547 U.S.

250, 256 (2006).

Defendant Pestak has not argued that Plaintiff's statements directed towards him

were unprotected, nor does he argue that his actions in arresting and prosecuting

Plaintiff would not have a chilling effect. He instead focuses on the third prong,

arguing that the arrest was substantially motivated by (1) probable cause that Plaintiff

had violated § 30-22-1, and (2) Plaintiff's defiance of a police order, not by Plaintiff's

protected speech. *Doc. 119* at 25-26.

The first argument fails because the Court has already determined that, under

Plaintiff's version of facts, Defendant Pestak did not have probable cause to arrest

Plaintiff. *Supra* Section I.B.1. However, Defendant's second argument succeeds because

Plaintiff has not shown that the arrest was substantially motivated as a reaction to

protected speech. The only speech at issue prior to the arrest, on a view of facts

21

favorable to Plaintiff, are the questions "who is in charge?" and "why?" in response to Defendant Pestak's command to return to the store.  Doc. 64, Ex. A at 133:1, 136:17. More significantly, Plaintiff was also physically refusing to comply with Defendant Pestak's order by remaining in place.  Plaintiff does not argue that this refusal was "speech" protected by the First Amendment.

Even accepting Plaintiff's allegations, he has not shown that a reasonable juror could conclude that Plaintiff's questions substantially motivated Defendant's decision to arrest him.  Instead, it appears quite clear that it was Plaintiff's refusal to comply, and not any speech, that motivated the arrest.  Therefore, the Court will grant Defendant Pestak's motion for qualified immunity as to the retaliatory arrest claim of Count IV.

2.      **Retaliatory Prosecution**

Plaintiff also argues that Defendant Pestak's institution of the criminal action against him was also in retaliation for his speech prior to, and during, the arrest.  In addition to the three elements described above, a plaintiff bringing a retaliatory prosecution claim must plead and prove the absence of probable cause.  See *Hartman*, 547 U.S. at 260-66.

As discussed above, before Defendant Pestak moved to arrest him, Plaintiff alleges that he had only asked two questions of the officers.  However, after that time but before Defendant Pestak filed a criminal complaint against Plaintiff, Plaintiff spoke more freely.  Specifically, while being examined by the EMTs, Plaintiff said, apparently

directed at Defendant Pestak, "that f***ing smart ass don't know what the f*** he is

doing.  I'm going to sue your f***ing ass."  *Doc. 119*, Ex. B at 74:9-23.  While Plaintiff's

language was clearly rude and vulgar, such statements are ordinarily[5] speech protected

under the First Amendment.  *See City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987)

("The freedom of individuals verbally to oppose or challenge police action without

thereby risking arrest is one of the principal characteristics by which we distinguish a

free nation from a police state.").  Therefore, Plaintiff may be able to establish the first

element.  Moreover, as the institution of a criminal prosecution may have a chilling

effect on Plaintiff's critical speech, Plaintiff may be able to satisfy the second element.

With respect to the "substantial motivation" element, it is a closer call.  However, given

that it was after Plaintiff's insulting remarks that Defendant Pestak decided to institute

criminal charges against Plaintiff, a reasonable juror could find that Defendant Pestak's

decision to press the prosecutor to bring charges was substantially motivated by

Plaintiff's speech.  *See McCook v. Springer Sch. Dist.*, 44 F. App'x 896, 907 (10th Cir. 2002)

(recognizing in a retaliatory First Amendment claim  that "protected conduct closely

followed by adverse action may justify inference of retaliatory motive...").  As discussed

above, considering the evidence before the Court in the light most favorable* to

---

[5] Defendant has not argued that these statements constitute fighting words which fall outside the
protections of the First Amendment.  *See e.g. Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir. 1990).  As
such, the Court need not analyze that issue.  *See Evans*, 427 F. App'x at 447.

Plaintiff, he may be able to establish the absence of probable cause.[6]

Finally, in a retaliatory prosecution suit, a plaintiff "must show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor[7] to bring charges that would not have been initiated without his urging." *Id*. at 262. As the Supreme Court recognized, the presence or absence of probable cause "looms large" in this element. *Id*. at 265. Thus, the fact that Plaintiff may be able to establish the lack of probable cause may be enough to satisfy this element for the purposes of the instant motion. Moreover, both Ms. Murphy's affidavit and Defendant Pestak's testimony would support a finding that he was the moving force behind the prosecution. *Id*. ¶ 12, Ex. B at 96:15-99:7. Defendant argues that Defendant Pestak did not cause Plaintiff's prosecution because "the District Attorney's office was responsible for Goton's prosecution…." *Doc. 119* at 23. Indeed, Ms. Murphy's affidavit indicates that she made the final decision to prosecute Plaintiff. *Doc. 119*, Ex. E. However, the affidavit makes clear that this decision was based upon the facts presented to her by the deputies at the scene. These facts differ in material ways from Plaintiff's description of events. If a juror were to accept Plaintiff's version of events, then, to the extent he was involved in the presentation of inaccurate facts to Ms. Murphy, Defendant Pestak could

---

[6] Moreover, in a motion for summary judgment based on qualified immunity when retaliatory intent is at issue, the defendant has the burden of making "a *prima facie* showing of the objective reasonableness of the challenged conduct." *McCook*, 44 F. App'x at 905. Because he cannot establish the existence of probable cause as a matter of law, it would seem that Defendant Pestak cannot make this showing.

[7] As the Supreme Court there noted, retaliatory prosecution claims cannot be brought against the prosecutors themselves, who have absolute immunity for prosecutorial decisions. *Hartman*, 547 U.S. at 262.

24

not rely on her prosecutorial decision Plaintiff to defeat causation.  Certainly, if the facts as found by the jury match those communicated to Ms. Murphy, then this retaliatory prosecution claim will fail.  Nonetheless, that is not a decision this Court can make as a matter of law.

Based on the foregoing, Plaintiff has demonstrated the requisite "genuine issue of material fact as to whether a non-immune defendant influenced the decision to prosecute in retaliation for protected speech." *Becker*, 494 F.3d at 926.

### 3.    Plaintiff's Right Was Clearly Established

Defendant Pestak does not argue that the law surrounding retaliatory prosecution was not clearly established at the time of the incident.[8]  Indeed, it is "settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, **including criminal prosecutions**, for speaking out." *Hartman*, 547 U.S. at 256 (citation omitted) (emphasis added); *see also Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008).  Plaintiff possessed a clearly established right to be free from criminal prosecution not based in probable cause when Defendant Pestak brought a criminal action in 2011.  The Court therefore grants Defendant Pestak's motion for summary judgment on Count IV in regards to the retaliatory arrest and denies it in regards to the retaliatory prosecution.

---

[8] Defendant does argue that the law regarding retaliatory arrest when probable cause existed was not clearly established at the relevant time.  *Doc. 119* at 26.  The Court has granted qualified immunity as to the retaliatory arrest claim and thus there is no need to address the "clearly established" prong regarding that claim.

## V.    PLAINTIFF'S STATE LAW CLAIMS

In addition to his federal causes of action, Plaintiff also pleads four state law counts: unreasonable search and seizure in violation of the New Mexico Constitution (Count V); tortious battery, personal injury, and excessive force under the New Mexico Tort Claims Act (Count VI); false imprisonment and arrest under state law (Count VII); and malicious prosecution and abuse of process under state law (Count VIII).  Because these claims are the state law analogues of Plaintiff's federal claims, the Court will incorporate much of its foregoing analysis—particularly its probable cause determination in Section I.B.1—into this Section.

### A.    **The Court Will Exercise Pendant Jurisdiction Over Plaintiff's State Law Claims**

The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, which provides, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Neither Plaintiff nor Defendant has challenged the Court's ability to hear Plaintiff's state law claims, and both appear, on the face of the pleadings and briefing, to expect the Court's adjudication of all of Plaintiff's claims.  As all of Plaintiff's state law claims arise out of the same events at issue in the federal claims, the Court will exercise its supplemental jurisdiction over them.

26

## B.    Count V (Unreasonable Search and Seizure)

Plaintiff argues that his arrest constitutes an unreasonable seizure in violation of Article II, Section 10 of the New Mexico Constitution.  "A plaintiff may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the [New Mexico Tort Claims Act] contains a waiver of immunity." *Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1211 (D.N.M. 2010).  Under the New Mexico Tort Claims Act (NMTCA), police officers are typically subject to liability for intentional torts arising from deprivations of rights provided by the New Mexico Constitution.  N.M. Stat. § 41–4–12; *Sisneros*, 685 F. Supp. 2d at 1212. Defendant Pestak is therefore amenable to suit for wrongful seizure in violation of the New Mexico Constitution.

"All warrantless arrests must comply with the 'reasonableness' component of Article II, Section 10 of the New Mexico Constitution." *Campos v. State*, 870 P.2d 117, 119 (1994).  A warrantless seizure by the police is presumptively unreasonable; the State bears the burden of showing that the seizure was justified by an exception to the warrant requirement.  *State v. Morales*, 189 P.3d 670, 673 (2008).  "For a warrantless arrest to be reasonable it must be based upon both probable cause and sufficient exigent circumstances." *Campos*, 870 P.2d at 118.  As discussed above, the Court has determined that a reasonable jury could find that Plaintiff was subject to a warrantless arrest without probable cause.  Because Defendant Pestak has not attempted to address

27

Plaintiff's claim for unreasonable seizure under Article II, Section 10 of the New Mexico Constitution beyond asserting there was probable cause, Defendant Pestak has not established that he is entitled to judgment as a matter of law on this claim.  Defendant Pestak's Motion for Summary Judgment on Count V is denied.

**C.**   **Count VI (Tortious Battery and Excessive Force Under the New Mexico Tort Claims Act)**

The NMTCA specifically waives immunity for tortious battery by law enforcement officers.  N.M. Stat. § 41-4-12.  While the tort of battery is not clearly defined under New Mexico law, this Court has held, upon an exhaustive analysis of New Mexico law, that  "the elements of civil and criminal assault and battery are essentially identical" consisting of "(a) [the] intent[ion] to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results."  *Sisneros*, 685 F. Supp. 2d at 1220-21 (citations and quotations omitted); s*ee also St. John v. McColley*, 653 F. Supp. 2d 1155, 1165 (D.N.M. 2009).  When dealing with a battery claim pursuant to an arrest, the New Mexico Supreme Court explained:

> In attempting to arrest plaintiff for a misdemeanor or in conserving the peace, defendant was entitled to use such force as was reasonably necessary under all the circumstances of the case. Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests or to preserve the peace. When acting in good faith, the courts will afford them the utmost protection. . . . However, it devolves upon the jury, under the evidence in the case and proper instructions of

the court, to resolve these questions.

*Mead v. O'Connor*, 344 P.2d 478, 479-80 (1959).

Defendant Pestak argues that because his use of force was objectively reasonable, he cannot be liable for tortious battery. *Doc. 64* at 11-14. In doing so, however, Defendant Pestak relies solely on his Fourth Amendment excessive force arguments.[9] *See id.* at 14 ("Defendant Pestak's actions [as to Plaintiff's claims of battery and excessive force] are privileged under New Mexico law for the same reasons they are reasonable under the Fourth Amendment"). As the Court has rejected those arguments above, it must also reject them here. *See supra* pp. 17-20. The Court therefore denies Defendant Pestak's Motion for Summary Judgment as to Count VI.[10]

## C.   Count VII (False Imprisonment and Arrest Under the New Mexico Tort Claims Act)

The NMTCA also specifically waives immunity for law enforcement officers sued for false imprisonment or false arrest. N.M. Stat. § 41-4-12. "The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." *Santillo*

---

[9] The Court notes that, unlike in a Fourth Amendment excessive force claim, no showing of actual injury is required under New Mexico law to show battery. *See Selmeczki v. N.M. Dept. of Corrections*, 129 P.3d 158, 167 (2006)("[i]t is black-letter law that causing an offensive touching, even indirectly to another's clothing and not resulting in injury, is the tort of battery").

[10] The title of Plaintiff's Count VI includes the claim of "Excessive Force." *Doc. 1*, Ex. B at 12. To the extent this precise claim is recognized under New Mexico law, there is no material difference from the battery claim under these facts.

*v. N.M. Dep't of Pub. Safety*, 173 P.3d 6, 10 (N.M. Ct. App. 2007). "A false arrest is merely one way of committing false imprisonment." *Id.* Where "[n]o crime or misdemeanor ha[s] been committed by [the arrestee], and there being no circumstance or circumstances indicating probable cause or justifying a reasonable belief that the [arrestee] had committed a crime or misdemeanor in the presence of the [arresting officer]" such an arrest is unlawful. *Ulibarri v. Maestas*, 395 P.2d 238, 239 (N.M. 1964). The arresting officer's subjective belief that he had the right to arrest the arrestee "does not excuse him from the consequences of an unlawful arrest where . . . no offense has actually been committed and the circumstances do not permit or justify a reasonable belief that an offense has been or probably has been committed." *Id.* at 239-40. The officer's good faith belief that the arrest was lawful is not relevant to the false imprisonment analysis. *Id.* at 240.

Here, for the reasons discussed at length above, under Plaintiff's facts, Defendant did not have probable cause to arrest Plaintiff or a reasonable belief that Plaintiff had committed a crime. *See supra* Section I.B.1. Defendant Pestak's Motion for Summary Judgment on Count VII is denied.

## D. Count VIII (Malicious Prosecution and Abuse of Process Under the New Mexico Tort Claims Act)

Plaintiff's final claim is "malicious prosecution and abuse of process." *Doc. 1*, Ex. B ¶¶ 96-98. The NMTCA waives immunity for law enforcement officers sued for either tort. N.M. Stat. § 41-4-12. Under New Mexico law, the torts of malicious prosecution

and abuse of process have been combined into a single cause of action for malicious

abuse of process. *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009).  The elements of this tort

are: "(1) the use of process in a judicial proceeding that would be improper in the

regular prosecution or defense of a claim or charge; (2) a primary motive in the use of

process to accomplish an illegitimate end; and (3) damages." *Id.*

      Filing an criminal complaint without probable cause satisfies the first element.

*See Santillo*, 173 P.3d at 10-11.  "Probable cause in the malicious abuse of process context

is defined as a reasonable belief, founded on known facts established after a reasonable

pre-filing investigation that a claim can be established to the satisfaction of a court or

jury.  The lack of probable cause must be manifest." *Fleetwood Retail Corp. of N.M. v.

LeDoux*, 164 P.3d 31, 35 (N.M. 2007) (quotation and citation omitted). For the reasons

discussed above, a reasonable jury could find that Defendant Pestak filed the criminal

complaint after arresting Plaintiff without probable cause without a reasonable belief

that this criminal charge could be sustained.  Plaintiff therefore satisfies the first

element.

      As to the second element, the Supreme Court of New Mexico has given several

examples of improper purpose, including (i) knowingly pursuing a meritless claim; (ii)

pursuing a claim primarily to deprive another of the beneficial use of his or her

property in a manner unrelated to the merits of the claim; (iii) misusing the law

primarily for harassment or delay; or (iv) initiating proceedings primarily for the

purpose of extortion.  *DeVaney*, 953 P.2d at 287.  Here, Defendant Pestak's improper

purpose may be inferred from the lack of probable cause to file criminal charges.

*DeVaney*, 953 P.2d at 287.  In addition, Plaintiff's allegations of retaliation could be

construed as either the knowing pursuit of an illegitimate claim or the use of a lawsuit

for the purposes of harassment.  Finally, Plaintiff has demonstrated damages by having

to hire a lawyer and defend himself against the criminal charges laid by Defendant

Pestak.

Plaintiff has set forth sufficient factual allegations to make out a claim for

malicious abuse of process.  Defendant Pestak's sole defense—that he had probable

cause to arrest Plaintiff—cannot be sustained under the facts as the Court must interpret

them in summary judgment.  Because Defendant Pestak has not shown that he is

entitled to judgment as a matter of law on this Count, Defendant's Motion for Summary

Judgment on Count VIII is denied.

## VI.   CONCLUSION

For the foregoing reasons, Defendant Pestak's Motion for Summary Judgment as

to Counts I, III, IV (retaliatory prosecution), V, VI, VII, and VIII is DENIED.  Defendant

Pestak's Motion for Summary Judgment as to Counts II and IV (retaliatory arrest) is

GRANTED.

**IT IS SO ORDERED.**   _____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**